UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____      )
                                 )
WILLIAM GIBSON,                  )
                                 )
        Petitioner,              )
                                 )
V.                               )      Civil Action No. 04-40036-DPW
                                 )
DAVID L. WINN,                   )
                                 )
        Respondent.              )
_____      )
```

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The United States Attorney respectfully requests this Court to dismiss the above-captioned matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as the petitioner fails to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

The petitioner, William Gibson, is a federal inmate who has been incarcerated at the Federal Medical Center in Devens, Massachusetts (hereinafter "FMC Devens") since October 22, 2002. See **Document 1a**.[1]  On May 8, 2003, Incident Report Number 1102458 was issued by T. Coger, Senior Officer Specialist, charging the petitioner with "Making, Possessing, or Using Intoxicants," a violation of Bureau of Prisons Prohibited Acts Code 222.  See **Document 1b**, Incident Report Number 1102458, §§ 9-13.  The

---

[1]Document 1 is the declaration of Stephanie Scannell, a Paralegal Trainee for the Federal Bureau of Prisons, asserting that the documents provided are true and accurate copies of the Federal Bureau of Prison's records.

incident report stated that on May 8, 2003, at approximately 5:05 p.m., the officer "found a two quart plastic jug, containing approx. 3 cups of a dark brown liquid, in the locked locker of [inmate] Gibson." Id. § 11.  The officer further explained that when he opened the lid, a "pungent odor of a fermenting beverage escaped from the bottle." Id.  The officer continued his description of the incident in a memorandum to the Operations Lieutenant, stating that approximately two and a half hours after finding the bottle, he "conducted an alcohol content test using the Alco-Sensor III." See **Document 1c**, Memorandum dated May 8, 2003, from T. Coger, Senior Officer Specialist, to J. Diamond, Operations Lieutenant.  Upon testing, the Alco-Sensor III "registered a numerical reading of .023." Id.  The Memorandum states, "a reading of .02 or higher is considered positive for alcohol content." Id.  See also **Document 1d**, Bureau of Prisons' Program Statement 6590.07, Alcohol Surveillance and Testing Program, § 9.

On May 9, 2003, at approximately 7:50 a.m., Acting Lieutenant J. Morasse delivered a copy of Incident Report Number 1102458 to the petitioner. See **Document 1b**, §§ 14-16.  Acting Lieutenant Morasse initiated an investigation into the incident at that time, which included an interview with the petitioner. Id. § 22.  After the petitioner was advised of his rights and indicated that he understood them, he stated that "All I did was

2

make some tea on Saturday." Id. §§ 23-24. The petitioner further stated that "it sat in his locker [for] a week and that anything would ferment in that amount of time." Id. § 24. The petitioner requested no witnesses during the investigation. Id. § 25. Upon concluding the investigation, Acting Lieutenant Morasse concluded that the incident report was valid and warranted, and referred the case to the Unit Disciplinary Committee (hereinafter "UDC") for further action. Id. §§ 26-27.

On May 14, 2003, at approximately 9:20 a.m., a hearing was held before the UDC, which consisted of Case Manager M. Sheridan, and Correctional Counselor D. Jones. See **Document 1b**, § 21. The petitioner appeared before the UDC and stated, "I made a half gallon of tea, I only drank half of it and put it on the floor by my bunk." Id. § 17. He further stated that the tea "sat there for five days until inspection, and I put it in my locker and forgot about it." Id. At the conclusion of the initial hearing, the UDC referred the offense to the Discipline Hearing Officer (hereinafter "DHO") for disposition. Id. § 18-19. This referral was based upon the seriousness of the infraction. Id. The UDC's recommendation to the DHO, if the petitioner was found to have committed this prohibited act, was 30 days loss of commissary, 30 days loss of visiting (suspended pending 180 days clear conduct), and time served in Disciplinary Segregation. Id. § 20.

3

On May 14, 2003, following the UDC hearing, the petitioner was given notice of his DHO hearing.  See **Document 1e**, Notice of Discipline Hearing Before the DHO.  The petitioner was also advised of his rights before the DHO at that time.  See **Document 1f**, Inmate Rights at Discipline Hearing.  The petitioner requested staff representation and a staff member was appointed to the case.  See **Document 1e**.  See also **Document 1g**, Duties of a Staff Representative.  The petitioner indicated that he did not wish to call any witnesses at his DHO hearing.  See **Document 1e**.

On May 20, 2003, at approximately 1:05 p.m., the DHO hearing was held.  See **Document 1h**, Discipline Hearing Officer Report, § I(B).  The petitioner had a staff representative present at the hearing, who indicated that he "discussed the Incident Report and supporting documentation with inmate Gibson."  Id. § II(E).  The petitioner indicated that he understood the charge, understood his rights, and had discussed the Incident Report with his staff representative.  Id. § III(B).  During the hearing, the petitioner denied the charge, admitting "I did make tea in a plastic jug and I put it inside my locker."  Id.  He further stated that the tea "sat for five days" and he "drank half of it."  Id.  The petitioner claimed, "I forgot about it," and "It was just tea and sugar."  Id.  The petitioner did not request any witnesses to appear on his behalf at the hearing.  Id. § III(C).

At the conclusion of the hearing, the DHO determined that

4

the petitioner committed the prohibited act as charged, Code 222, "Making, Possessing, or Using Intoxicants." See **Document 1h**, §§ IV, V.  The DHO indicated the finding was based upon the reported account of the correctional officer, who indicated that he confiscated a plastic jug containing a brown liquid from inside inmate Gibson's locker cabinet.  See **Document 1h**, § V.  The liquid emitted a pungent odor consistent with fermentation, and a test of the confiscated liquid with the Alco-Sensor III Breathalyzer revealed a positive alcohol content of .023.  Id.

Although the DHO considered the petitioner's statements, he determined that the petitioner failed to present sufficient evidence to refute the charge against him.  The petitioner admitted that the jug containing the liquid belonged to him.  Id.  He did not present sufficient evidence to show that the jug was not confiscated from his locker or that it did not produce a positive alcohol content.  Id.  Therefore, the DHO determined that the petitioner committed the prohibited act based upon the greater weight of the evidence.  See **Document 1h**, § V.

After finding that the petitioner violated Code 222, "Making, Possessing, or Using Intoxicants," the DHO imposed the sanction of 30 days Disciplinary Segregation and disallowance of 27 days Good Conduct Time.  See **Document 1h**, § VI.  The DHO also imposed a loss of commissary privileges for six months and a loss of social telephone privileges for six months (suspended pending

5

clear conduct for 180 days).  Id.  Following this determination and imposition of sanctions, on June 4, 2003, the petitioner was provided with a copy of the DHO report and was advised of his right to appeal this action within twenty (20) calendar days under the Administrative Remedy Procedure.  Id. at §§ VIII, IX.

On or about May 23, 2003, the petitioner appealed the DHO's decision to the Northeast Regional Director of the Federal Bureau of Prisons.  See **Document 1i**, Regional Administrative Remedy Appeal, Case Number 303492-R2, and Response.  In the regional appeal, the petitioner asserts his innocence and "question[s] the accuracy" of the Alco-Sensor tests.  Id.

In a response dated August 13, 2003, the petitioner's appeal was denied.  See **Document 1i**.

On or about August 27, 2003, the petitioner submitted a Central Office Administrative Remedy Appeal to the National Inmate Appeals Administrator challenging the Regional Director's response.  See **Document 1j**, Central Office Administrative Remedy Appeal, Case Number 303492-A1, and Response.  In his appeal, the petitioner contends that he "wasn't provided with the proper paperwork in order to adequately refute this incident report." Id.  The petitioner questions the validity and reliability of the Alco-Sensor test, and contends that he was denied his "right to 'procedural due process' by not being allowed to adequately refute the above allegations" or "face my accusers."  Id.

6

In a response dated October 10, 2003, the National Inmate Appeal's Administrator denied the petitioner's appeal.  <u>See</u> **Document 1j**.  The response concluded that "the required disciplinary procedures were substantially followed, the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense and in compliance with policy."  <u>Id</u>.

**LEGAL ARGUMENT**

**I.    Standard of Review for a Motion to Dismiss**

A motion to dismiss challenges the sufficiency of the complaint without being subjected to discovery or other costly and time-consuming proceedings.  <u>Rutman Wine Co. v. E. & J. Gallo Winery</u>, 829 F.2d 729, 738 (9th Cir. 1987).  As is customary, the factual allegations of a Complaint are taken as true.  <u>E.g.</u>, <u>Edwards v. John Hancock Mutual Life Insurance Co.</u>, 973 F.2d 1027, 1028 (1st Cir. 1992); <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 443 (1st Cir. 1992).  *See* <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>McDonald v. Commonwealth of Massachusetts</u>, 901 F. Supp. 471, 475 (D. Mass. 1995).

The complaint of a *pro se* plaintiff should be read with an indulgent, and not a hypercritical, eye.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  But, "a petitioner who elects to proceed *pro se* must comply with the applicable procedural and substantive rules of law."  <u>Lefebre v. C.I.R.</u>, 830 F.2d 417, 419 (1st Cir

7

1987).

## II.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted. Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief." The claimant is required "to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 217 (D. Mass. 1995), quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

## III. The Petitioner Was Not Denied Procedural Due Process.

The petitioner contends that he was denied due process during his DHO hearing when he was "denied his right to face his accusers, to be permitted to both review and contest the documentary evidence against him, . . . and was denied any and all documentation on this institution's procedure's on administering the Alco-Sensor III device."  See Petition for Writ of Habeas Corpus, p. 4.  The petitioner also states that "the institution failed to follow the proper procedures and methods in administering the Alco-Sensor III," and "failed to properly train

8

the administering officer." Id.  These arguments lack merit
because the petitioner was not denied any procedure required
under the Due Process Clause, and the institution's use of the
Alco-Sensor III was proper and accurate.

The due process standards applicable to prison disciplinary
proceedings are set forth by the United States Supreme Court in
Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974).  "Prison
disciplinary proceedings are not part of a criminal prosecution,
and the full panoply of rights due a defendant in such
proceedings does not apply." Id. at 556, 2975.  In the context
of prison disciplinary hearings, the United States Supreme Court
articulated the minimal procedural due process standards to be:
(1) advanced written notice of the disciplinary charges; (2) the
opportunity, when consistent with institutional and correctional
goals, to call witnesses and present documentary evidence on the
inmate's behalf; and (3) a written statement from the fact finder
as to the evidence relied on and the reasons for the disciplinary
action.  Id. at 563-67, 2978-2980; see also McGuinness v. Dubois,
75 F.3d 794, 797-98 (1st Cir. 1996).

Since Wolff, the Bureau of Prisons established regulations
setting forth the procedures for DHO hearings.  See 28 C.F.R. §
541.10 et seq. (2003).  These regulations substantially track the
procedures set forth in Wolff, supra.  In some respects, however,
the regulations go beyond the constitutionally mandated

9

procedures.  Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa 1994).

The Bureau of Prisons disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  Under the applicable regulations, when Bureau staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation.  28 C.F.R. § 541.14.  After investigation, the incident report is referred to a Unit Disciplinary Committee for an initial hearing.  28 C.F.R. § 541.15.  The initial hearing is ordinarily held within three work days (excludes the day staff became aware of the incident, weekends, and holidays) from the time staff became aware of the inmate's involvement in the incident.  28 C.F.R. § 541.15(b).  The inmate is entitled to be present unless institutional security would be jeopardized.  28 C.F.R. § 541.15(c).  Inmates are entitled to make a statement and present documentary evidence on their own behalf.  28 C.F.R. § 541.15(d).  The UDC must consider all the evidence presented at the hearing and shall make its decision based on "at least some of the facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence."  28 C.F.R. § 541.15(f).  The UDC may either reach a finding whether a prohibited act was committed or refer the case to the Discipline Hearing Officer ("DHO") for further

10

hearing.  28 C.F.R. § 541.15(f).  It is required that a written copy of the UDC decision and disposition be provided to the inmate.  28 C.F.R. § 541.15(f).  Any minor disposition by the UDC is reviewable under the Administrative Remedy Procedure.  The DHO has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. § 541.18.

The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.17.  These procedures were designed to meet the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Frankenberry v. Williams, 677 F.Supp.793, 796-97 (M.D.Pa), aff'd, 860 F.2d 1074 (3d Cir. 1988).

Specifically, the regulations require the Warden to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing.  28 C.F.R. § 541.17(a).  Next, the Warden shall provide an inmate with a full time staff member to represent him/her at the DHO hearing, if the inmate desires.  28 C.F.R. § 541.17(b).  At the DHO hearing, the inmate is entitled to make a statement and present documentary evidence.  The inmate has the right to submit names of requested witnesses and have them called to testify and to present documents.  The DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available.  The DHO need not

11

call repetitive witnesses or adverse witnesses.  28 C.F.R. §
541.17(c).  The inmate has the right to be present throughout the
DHO hearing except during deliberation or when institutional
security would be jeopardized.  28 C.F.R. § 541.17(d).  The DHO
must consider all evidence presented at the hearing.  The
decision of the DHO must be based on at least some facts, and if
there is conflicting evidence, it must be based on the greater
weight of the evidence.  28 C.F.R. § 541.17(f).  Finally, the DHO
must prepare a record of the proceedings.  This record must be
sufficient to document the advisement of inmate rights, the DHO's
findings, the DHO's decision, and the specific evidence relied
upon by the DHO.  The record must include a brief statement of
the reasons for the sanctions imposed.  A copy of this record
must be delivered to the inmate, ordinarily within 10 days of the
hearing.  28 C.F.R. § 541.17(g).

In this case, the Petition should be denied, because the
petitioner failed to establish that he was denied any of the
above described procedures.  The petitioner's allegations that he
was denied due process are without merit.  The record indicates
that Incident Report Number 1102458 was issued on May 8, 2003.
See **Document 1b**.  One day later on May 9, 2003, the petitioner
was interviewed about the allegations during the Acting
Lieutenant's investigation into the incident.  Id. §§ 22-27.  In
accordance with statute, the UDC hearing is "ordinarily held

12

within three work days from the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(b). However, in this instance, the inmate was advised of the atypical one day delay due to Unit Staff being in training.  <u>See</u> **Document 1k**, Advisement of Incident Report Delays.  Consequently, the UDC hearing was then held within four working days of the incident report.  <u>Id</u>. § 21.  The petitioner was present at the UDC hearing, during which it was determined that the case would be referred to the DHO for further hearing.  <u>See</u> **Document 1b**, §§ 17-19.

The petitioner was provided with advanced written notice of the charges against him at least 24 hours prior to the DHO hearing.  <u>See</u> **Documents 1b, 1e, 1h**.  The petitioner was present throughout his DHO hearing.  <u>See</u> **Document 1h**.  The petitioner requested a staff representative, who appeared at the DHO hearing.  <u>See</u> **Documents 1e, 1g, 1h**.  The petitioner made a statement to the DHO concerning the allegations against him.  <u>See</u> **Document 1h**, § III(b).  The petitioner did not raise any procedural errors at the time he gave his statement to the DHO. <u>Id</u>.  The petitioner did not request any witnesses to testify at his DHO hearing.  <u>See</u> **Documents 1e** and **1h**.  The DHO's determination was based upon the greater weight of all the evidence presented.  <u>See</u> **Document 1h**, §§ IV, V.  According to 28 C.F.R. § 541.17(g), a copy of the written report and sanctions

13

must be delivered to the inmate, ordinarily within 10 days of the DHO's decision.  28 C.F.R. § 541.17(g).  In this instance, the petitioner was provided with a copy of the written report and sanctions from the DHO on June 4, 2003.  See **Document 1h**, § IX. This slight delay was the result of case load within the institution.  See **Document 1l**, Memorandum for Central File from D. Bracy, Discipline Hearing Officer.

As discussed above, the petitioner received a fair hearing consistent with regulations and he alleges no other procedural errors.  To the extent the petitioner claims that he was denied due process, such claims are without merit and should be denied.

**IV.  The Determination of the DHO Was Supported By Some Evidence.**

It is well settled that the decision of a prison disciplinary board is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support the decision.  Superintendent v. Hill, 472 U.S. 445, 454-455, 105 S.Ct. 2768, 2775 (1985); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986).  In reaching this standard, the Supreme Court stated that a court need not examine the complete record, assess the credibility of the witnesses, nor weigh the evidence, when reviewing the findings of a prison disciplinary board.  Instead, "the relevant question is whether there is any evidence in the

14

record that could support the conclusion reached by the
disciplinary board." Superintendent v. Hill at 455-56, 2775-76.

Applying this standard, once the reviewing court determines
there is at least "some evidence" to support the findings of the
board, the court must reject the evidentiary challenge by the
petitioner and uphold the findings. Griffin v. Spratt, 969 F.2d
16, 22 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500, 501 (3d
Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986).

Although the due process clause protects against arbitrary
decisions in prison disciplinary hearings, it provides less
protection than in criminal prosecutions. Ferreira v. Dubois,
963 F.Supp. 1244, 1255 (1st Cir. 1996) (citing Duffy v. Riveland,
88 F.3d 1525, 1536 (D.Mass. 1996)). In addition, the due process
clause does not require that the evidence presented to the
disciplinary committee comply with the Federal Rules of Evidence.
Pella v. Adams, 702 F. Supp. 244, 246 (D. Nev. 1988). The due
process clause requires that prison disciplinary proceedings base
their actions on some evidence that has indicia of factual
reliability rather than scientific exactitude. Id. at 247.

In the instant case, the petitioner contends that the
institution failed to follow procedures and methods in
administering the Alco-Sensor III Breathalyzer. Because of this,
the petitioner asserts his innocence and contends that the
results of the test were "skewed and less than accurate." See

15

Petition for Writ of Habeas Corpus, p. 4.  This argument is extremely speculative and is not supported by the available evidence.

The evidence available to the DHO at the time of the hearing concerning Incident Report 1124685 was the following:

1)   Incident Report 1102458 and the investigation;

2)   Reported account of T. Coger, Senior Officer Specialist, who stated that on May 8, 2003, at approximately 5:05 p.m., he confiscated a jug from the petitioner's locker containing a brown liquid with a pungent odor consistent with fermentation;

3)   Memorandum from T. Coger, Senior Officer Specialist, stating that he tested the liquid in question with the Alco-Sensor III Breathalyzer approximately two and a half hours after confiscation, and obtained a positive alcohol content of .023;

4)   The petitioner's statement that, "I deny the charge.  I did make tea in a plastic jug and I put it inside my locker.  It sat for five days.  I drank half of it.  I forgot it was there.  It was just tea and sugar.";

7)   Program Statement 6590.07, Alcohol Surveillance and Testing Program;

8)   Institution Supplement 6590.07C, Alcohol Surveillance and Testing Program;

9)    Chronological Disciplinary History for inmate W. Gibson,
      Reg. No. 23848-038.

     Program Statement 5270.07, <u>Alcohol Surveillance and Testing</u>
<u>Program</u>, clearly states, "The Alco-Sensor instrument shall be
used to test liquids suspected of containing alcohol following
procedures outlined in the company brochure." <u>See</u> **Document 1d**, §
9. It further states, "Liquids with a test reading of .02 or
higher shall be considered positive for alcohol." <u>Id</u>. Contrary
to the petitioner's assertion, the Program Statement only
requires a confirmation test when testing an inmate who is
suspected to be intoxicated, not when testing a suspect liquid.
<u>Id</u>. §§ 8, 9. Further, in accordance with the Program Statement,
only alcohol tests performed on inmates, not on suspect liquids,
are recorded in an Alcohol Test Log. <u>See</u> **Document 1d**. <u>See</u> <u>also</u>
**Document 1m**, Alcohol Test Log, attached to the Declaration of
Stephanie Scannell. The Program Statement also dictates that
"[c]alibration checks shall be performed on the Alco-Sensor at
least monthly according to procedures outlined in the company
brochure, and each calibration shall be documented in the alcohol
test log." <u>See</u> **Document 1d**, § 6. In the instant case, the Alco-
Sensor instrument had been calibrated on May 1, 2003, only one
week prior to the incident involving the petitioner. <u>See</u>
**Document 1m**. Finally, all Bureau of Prisons officers are trained
by Lieutenants in the proper administration and procedures of

17

Alcohol Testing.  See **Document 1n**, Lesson Plan, Alcohol
Surveillance and Testing.

Being fully aware of that information, the DHO's finding was
based upon the reported account of the officer who confiscated a
plastic jug containing a pungent liquid from the petitioner's
locker.  See **Documents 1b** and **1h**.  The liquid emitted a pungent
odor consistent with fermentation and testing with the Alco-
Sensor Breathalyzer revealed a positive alcohol content of .023.
See **Documents 1b, 1c** and **1h**.  The DHO therefore determined that
the officer's account of the incident was credible as written.
See **Document 1h**, § V.  The DHO took into account the petitioner's
statement and denial of the charge, however, the petitioner did
not present sufficient evidence to refute the claim either by
showing that the liquid substance was not confiscated from his
assigned locker cabinet or that it did not produce a positive
result for significant alcohol content.  Id.

Therefore, after considering all the evidence, the DHO
relied upon the greater weight of the evidence in reaching his
determination.  Because the determination of the DHO was
supported by some evidence, any challenge to the decisions of the
DHO in finding the petitioner to have violated Code 222, "Making,
Using, or Possessing Intoxicants," should be denied.

## CONCLUSION

For the reasons discussed above, the petitioner's Petition

18

for Writ of Habeas Corpus under 28 U.S.C. § 2241 should be dismissed.

                                    Respectfully submitted,

                                    UNITED STATES OF AMERICA
                                    By its attorney,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney


                            By:  /s/_____
                                    Christopher R. Donato
                                    Assistant U.S. Attorney
                                    U.S. Attorney's Office
                                    John Joseph Moakley Courthouse
                                    Suite 9200
                                    1 Courthouse Way
                                    Boston, MA 02210
                                    (617) 748-3303

### CERTIFICATE OF SERVICE

     I certify that on this day a true copy of the respondent's Memorandum in Support of the Motion to Dismiss was served by first class mail, postage prepaid, upon the pro se petitioner at the following address:

William Gibson
#23848-038
FMC Devens
P.O. Box 879
Ayer, MA 01432


Dated: April 13, 2004          /s/_____
                                    Christopher R. Donato
                                    Assistant U.S. Attorney